## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

TIMOTHY S. BOYKIN, an individual,

        Plaintiff,

v.

FAMILY DOLLAR STORES OF MICHIGAN, LLC,
a Virginia limited liability company and successor to
FAMILY DOLLAR STORES OF MICHIGAN, INC.,
a former Virginia corporation and successor to
FAMILY DOLLAR STORES OF MICHIGAN, INC.,
a former Michigan corporation,

        Defendant.

Case No. 2:19-cv-10755

Hon. Gershwin A. Drain

_____/

| TISHKOFF PLC | OGLETREE, DEAKINS, NASH, |
|---|---|
| By:  William G. Tishkoff (P45165) | SMOAK & STEWART, PLLC |
| And:  Christopher M. Vukelich (P76420) | Thomas R. Paxton (P36214) |
| And:  Brooke N. Mathis (P82336) | Nicholas Huguelet (P74933) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 407 North Main Street | 34977 Woodward Ave., Ste. 300 |
| Ann Arbor, MI 48104 | Birmingham, MI 48009 |
| (734) 663-4077 | (248) 593-6400 |
| will@tish.law | (248) 593-2603 |
| chris@tish.law | thomas.paxton@ogletree.com |
| brooke@tish.law | nicholas.huguelet@ogletree.com |

_____/

## **AFFIDAVIT OF TIMOTHY S. BOYKIN**

I, Timothy Boykin, declare as follows:

1.    I am over the age of 21 and can testify to the facts stated in this

affidavit, which are based upon my personal knowledge.

2.     I reside in the City of Ypsilanti, County of Washtenaw, State of Michigan.

3.     I am an African American male.

4.     I was born February 8, 1948; I am currently seventy (70) years old, a grandfather to eight (8) children and a great-grandfather to three (3) children.

5.     I am a 1966 graduate of Saint Cecilia Catholic High School and received an Associates Degree in Business from Wayne State University in 1974.

6.     I served in the United States Army from 1966 through 1969, stationed primarily in Germany and received an Honorable Discharge.

7.     After gaining experience and distinguishing myself as a Store Manager for several major supermarkets, I accepted an offer and commenced employment as a Store Manager with Family Dollar Stores of Michigan, Inc., a Michigan corporation ("FDSM MiInc"), on September 30, 2003, first assigned to FDSM MiInc's Detroit location.

8.     I served FDSM MiInc as a Store Manager at several locations from September 30, 2003 until 2007.

9.     I received promotions from FDSM MiInc and served it as Area Operations Manager (metropolitan Detroit area) and then Performance Manager from 2007 until 2016.

2

10. Between 2003 and 2016, FDSM MiInc honored and distinguished me with in excess of 20 separate awards, honors and achievement recognitions.

11. I recently reviewed records showing that, in 2016, FDSM MiInc converted to Family Dollar Stores of Michigan, Inc. a Virginia Corporation ("FDMS VaInc").

12. In 2016, I was transferred from FDSM VaInc's location in Taylor, Michigan (Store #4851), to its location in Ypsilanti, Michigan (Store #2222), and served there as Store Manager.

13. From 2003 through April 2019, I was not aware that FDSM MiInc converted to FDMS VaInc.

14. I recently reviewed records showing that, in 2017, FDSM VaInc converted to Family Dollar Stores of Michigan, LLC., a Virginia limited liability company ("FDMS VaLLC").

15. I continued to serve as Store Manager for the above location (Store #2222) when FDSM VaInc converted to FDSM VaLLC in 2017.

16. The information provided by my employer for the period 2017 to 2018, including W-2s and paystubs, stated that my employer during this period was FDSM MiInc. My W-2s and paystubs for 2018 and 2017 are attached as Exhibit 1.

17. From 2003 through April 2019, I was not aware that FDSM VaInc converted to FDMS VaLLC.

3

18.     Throughout my above 15 years of employment with FDSM MiInc, FDSM VaInc and FDSM VaLLC, I maintained an impeccable employment record.

19.     I reviewed the email and prior string of emails Sara Rafal sent to William Tishkoff on March 13, 2019 at 2:37 PM, along with its attachment, a copy of a 5-page document entitled "Mutual Agreement To Arbitrate Claims" and containing a footer stating, "Revised effective 2/1/16." [The above email is referenced as "March 13 Rafal Email." The above attachment is referenced as "2/1/16 MAAC."] Attached as Exhibit 2 is a copy of the March 13 Rafal Email. Attached as Exhibit 3 is a copy of the 2/1/16 MAAC.

20.     I reviewed the Declaration Of Natalie Neely dated April 5, 2019 ("Neely Affidavit"), along with its attached exhibits: Exhibit A (referenced as "2013 Training Slides"); Exhibit B (referenced as "FDI MAAC"); and Exhibit C (referenced as "Training Slide Record"). The Neely Affidavit and its exhibits are collectively attached as Exhibit 4.

21.     I do not recognize, nor do I have knowledge or recollection of reviewing (prior to 2019), executing or acknowledging, in writing or electronically, the 2/1/16 MAAC or the FDI MAAC.

22.     I do not recognize, nor do I have knowledge or recollection of reviewing (prior to 2019), completing, executing or acknowledging, in writing or electronically, the 2013 Training Slides.

4

23. I do not recognize, nor do I have knowledge or recollection of reviewing (prior to 2019), completing, executing or acknowledging, in writing or electronically, the Training Slide Record.

24. I do not have knowledge or recollection of reviewing, completing, executing or acknowledging, in writing or electronically, an arbitration agreement or waiver of litigation rights, when I was hired by FDSM MiInc or at any time prior to 2019.

25. I do not have knowledge or recollection of reading, being informed, or learning, that a review, completion, execution or acknowledgement of an arbitration agreement or waiver of litigation rights was required by my employer when I was hired by FDSM MiInc or at any time prior to 2019.

26. I do not have knowledge or recollection of working on July 15, 2013.

27. In response to my Michigan Bullard-Plawecki, Right-To-Know-Act, MCL 423.501, October 10, 2018 request for my personnel file ("RTKA Request"), in late November 2018, FDSM VaLLC mailed me "all available records" regarding my employment file. A copy of FDSM VaLLC's cover letter for the above document production is attached as Exhibit 5. [The above document production is referenced as "RTKA Documents."]

5

28.     Included in the RTKA Documents was a copy of my weekly work schedule with FDSM VaLLC for 5/21/2013 – 7/15/2013 ("5/12/13 Weekly Work Schedule"). A copy of the 5/12/13 Weekly Work Schedule is attached as Exhibit 7.

29.     I am familiar with FDSM VaLLC's use of the 5/12/13 Weekly Work Schedule, which indicates that I was not scheduled to work on 7/15/13. *Id.*

30.     I reviewed the RTKA Documents, which did not include the 2/1/16 MAAC or the FDI MAAC.

31.     I do not have knowledge or recollection of, and I am not aware that, I was employed at any time by Family Dollar, Inc.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Timothy Boykin

Subscribed and sworn before me on this  April 7,            , 2019

_____, Notary Public
Kimberley Hoskins
County of  Washtenaw            , acting in County of  Washtenaw

My commission expires:  9/4/2025

6

# Exhibit 1

| 22222 | **a** Employee's social security number 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 | OMB No. 1545-0008 | | |
|---|---|---|---|---|

| **b** Employer identification number (EIN) 560991920 | **1** Wages, tips, other compensation 30 831.96 | **2** Federal income tax withheld 3 876.08 |
|---|---|---|
| **c** Employer's name, address, and ZIP code | **3** Social security wages 30 831.96 | **4** Social security tax withheld 1 911.58 |
| FAMILY DOLLAR STORES OF MI,INC | **5** Medicare wages and tips 30 831.96 | **6** Medicare tax withheld 447.06 |
| C/O Payroll | | |
| 500 Volvo Parkway | | |
| Chesapeake, VA 23320 | **7** Social security tips 0.00 | **8** Allocated tips 0.00 |
| **d** Control number | **9** Verification code | **10** Dependent care benefits 0.00 |

| **e** Employee's first name and initial   Last Name   Suff. | **11** Nonqualified plans 0.00 | **12a** C 14.25 |
|---|---|---|
| TIMOTHY S   BOYKIN | | |
| 8285 THORNHILL DR | **13** Statutory employee ☐  Retirement Plan ☐  Third-party sick pay ☐ | **12b** DD 2007.63 |
| YPSILANTI, MI 48197 | **14** Other | **12c** |
| | | **12d** |
| **f** Employee's address and ZIP code | | |

| **15** State | Employer's state ID number | **16** State wages, tips, etc. | **17** State income tax | **18** Local wages, tips, etc. | **19** Local income tax | **20** Locality name |
|---|---|---|---|---|---|---|
| MI | 56-0991920 | 30 817.71 | 1 201.18 | | | |

Form **W-2**  **Wage and Tax Statement**   2018

Department of the Treasury—Internal Revenue Service

| 22222 | a Employee's social security number 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 | OMB No. 1545-0008 | | |
|---|---|---|---|---|
| **b** Employer identification number (EIN) 56-0991920 | | **1** Wages, tips, other compensation 55 824.47 | **2** Federal income tax withheld 9 119.98 | |
| **c** Employer's name, address, and ZIP code Family Dollar Stores of Michigan, Inc. | | **3** Social security wages 55 824.47 | **4** Social security tax withheld 3 461.12 | |
| 10301 Monroe Road | | **5** Medicare wages and tips 55 824.47 | **6** Medicare tax withheld 809.45 | |
| Matthews, NC 28105 | | **7** Social security tips | **8** Allocated tips | |
| **d** Control number | | **9** Verification code | **10** Dependent care benefits | |
| **e** Employee's first name and initial TIMOTHY S | Last Name BOYKIN | Suff. | **11** Nonqualified plans | **12a** C 30.09 |
| 8285 THORNHILL DRIVE Ypsilanti, MI 48197 | | | **13** Statutory employee ☐ Retirement Plan ☐ Third-party sick pay ☐ | **12b** |
| | | | **14** Other 14B 275.50 | **12c** |
| | | | | **12d** |
| **f** Employee's address and ZIP code | | | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| MI | ME 0205270 | 55 824.47 | 2 201.18 | | | |

Form **W-2** Wage and Tax Statement     2017

Department of the Treasury—Internal Revenue Service



10301 Monroe Road · Matthews, NC 28105
P.O. Box 1017 · Charlotte, NC 28201-1017
1-866-377-6420

## MESSAGE FROM FAMILY DOLLAR

Electronic delivery of your W-2 is fast and secure. Don't forget to Opt-In for electronic delivery.

## Statement of Earnings and Deductions

**Pay Statement Number:** 1260903631      **Net Pay: $642.09**

| | |
|---|---|
| **Name:** TIMOTHY S. BOYKIN | **Social Security Number:** XXX-XX-3710 |
| **Team Member ID:** 323660 | **Location:** 02222/1 MI YPSILANTI |
| | **Employer:** Family Dollar Stores of Michigan, Inc. |
| **Period Start:** 12/24/2017 | **Base Rate:** $4,333.33 salary |
| **Period End:** 12/30/2017 | |
| **Payment Date:** 01/05/2018 | |
| | **Balance of Previous Vacation:** 24.366 days |
| | **Balance of PTO:** 0.000 days |
| | **Total Balance:** 24.366 days |

## Federal and State Tax Withholdings

| Type | Status | Allowances | Additional |
|---|---|---|---|
| Federal | Single | 0 | $0.00 |
| Michigan | Not Used | 1 | $0.00 |

## Earnings

| Description | Current | YTD |
|---|---|---|
| Regular Salary | $1,000.00 | $1,000.00 |
| GTL | $0.95 | $0.95 |
| **TOTAL EARNINGS** | **$1,000.95** | **$1,000.95** |

## Pay Statement Summary

| Description | Current | YTD |
|---|---|---|
| TOTAL EARNINGS | $1,000.95 | $1,000.95 |
| TOTAL IMPUTED EARNINGS | - $0.95 | - $0.95 |
| TOTAL TAX | - $251.96 | - $251.96 |
| TOTAL PRE-TAX | - $57.15 | - $57.15 |
| TOTAL OTHER (DEDUCTIONS) | - $48.80 | - $48.80 |
| **TOTAL NET EARNINGS** | **$642.09** | **$642.09** |
| **TOTAL NET PAYMENTS** | **$642.09** | **$642.09** |

## Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Federal Tax | $142.95 | $142.95 |
| Social Security | $58.52 | $58.52 |
| Medicare | $13.69 | $13.69 |
| MI State Tax | $36.80 | $36.80 |
| **TOTAL TAX** | **$251.96** | **$251.96** |

## Pre-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Long-Term Disability | $9.49 | $9.49 |
| Vision | $1.01 | $1.01 |
| Medical | $40.00 | $40.00 |
| Dental | $6.65 | $6.65 |
| **TOTAL PRE-TAX** | **$57.15** | **$57.15** |

## Other Deductions

| Description | Current | YTD |
|---|---|---|
| Co Car Personal Use | $20.77 | $20.77 |
| Short-Term Disability | $10.80 | $10.80 |
| Vol Life Emp | $11.31 | $11.31 |
| Vol Life Spouse | $5.92 | $5.92 |
| **TOTAL OTHER** | **$48.80** | **$48.80** |

## Deposit Information

| Bank | Type of Account | Account Number | Amount |
|---|---|---|---|
| BANK OF AMERICA | Checking Account | ********1931 | $642.09 |

**View your pay stub online at www.familydollar.com**
**(Associate Member Page - "My Online Paystub and W2" Link)**
You will need to provide your login ID (SSN no dashes) and your password.



**FAMILY DOLLAR**
*my family. my family dollar.*

10301 Monroe Road · Matthews, NC 28105
P.O. Box 1017 · Charlotte, NC 28201-1017
1-866-377-6420

## MESSAGE FROM FAMILY DOLLAR

Electronic delivery of your W-2 is fast and secure. Don't forget to Opt-In for electronic delivery.

## Statement of Earnings and Deductions

**Pay Statement Number: 1253213957**          **Net Pay: $672.29**

| | | |
|---|---|---|
| **Name:** TIMOTHY S. BOYKIN | **Social Security Number:** XXX-XX-3710 | |
| **Team Member ID:** 323660 | **Location:** 02222/1 MI YPSILANTI | |
| | **Employer:** Family Dollar Stores of Michigan, Inc. | |
| **Period Start:** 12/17/2017 | **Base Rate:** $4,333.33 salary | |
| **Period End:** 12/23/2017 | | |
| **Payment Date:** 12/29/2017 | | |
| | **Balance of Previous Vacation:** 24.366 days | |
| | **Balance of PTO:** 0.000 days | |
| | **Total Balance:** 24.366 days | |

### Federal and State Tax Withholdings

| Type | Status | Allowances | Additional |
|---|---|---|---|
| Federal | Single | 0 | $0.00 |
| Michigan | Not Used | 1 | $0.00 |

### Earnings

| Description | Current | YTD |
|---|---|---|
| Regular Salary | $1,000.00 | $49,333.33 |
| Sick Pay | $0.00 | $1,000.01 |
| Vacation Pay | $0.00 | $1,666.67 |
| Store Manager Bonus | $0.00 | $168.96 |
| DM Bonus | $0.00 | $3,865.43 |
| Company Car | $0.00 | $253.46 |
| GTL | $0.59 | $30.09 |
| **TOTAL EARNINGS** | **$1,000.59** | **$56,317.95** |

### Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Federal Tax | $154.77 | $9,119.98 |
| Social Security | $61.45 | $3,461.12 |
| Medicare | $14.37 | $809.45 |
| MI State Tax | $38.83 | $2,201.18 |
| **TOTAL TAX** | **$269.42** | **$15,591.73** |

### Pre-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Long-Term Disability | $9.49 | $493.48 |
| **TOTAL PRE-TAX** | **$9.49** | **$493.48** |

### Pay Statement Summary

| Description | Current | YTD |
|---|---|---|
| TOTAL EARNINGS | $1,000.59 | $56,317.95 |
| TOTAL IMPUTED EARNINGS | - $0.59 | - $283.55 |
| TOTAL TAX | - $269.42 | - $15,591.73 |
| TOTAL PRE-TAX | - $9.49 | - $493.48 |
| TOTAL OTHER (DEDUCTIONS) | - $48.80 | - $2,537.60 |
| **TOTAL NET EARNINGS** | **$672.29** | **$37,411.59** |
| **TOTAL NET PAYMENTS** | **$672.29** | **$37,411.59** |

### Other Deductions

| Description | Current | YTD |
|---|---|---|
| Co Car Personal Use | $20.77 | $1,080.04 |
| Short-Term Disability | $10.80 | $561.60 |
| Vol Life Emp | $11.31 | $588.12 |
| Vol Life Spouse | $5.92 | $307.84 |
| **TOTAL OTHER** | **$48.80** | **$2,537.60** |

### Deposit Information

| Bank | Type of Account | Account Number | Amount |
|---|---|---|---|
| BANK OF AMERICA | Checking Account | ********1931 | $672.29 |

**View your pay stub online at www.familydollar.com**
(Associate Member Page - "My Online Paystub and W2" Link)
You will need to provide your login ID (SSN no dashes) and your password.



10301 Monroe Road • Matthews, NC 28105
P.O. Box 1017 • Charlotte, NC 28201-1017
1-866-377-6420

## MESSAGE FROM FAMILY DOLLAR

Electronic delivery of your W-2 is fast and secure. Don't forget to Opt-In for electronic delivery.

## Statement of Earnings and Deductions

**Pay Statement Number:** 1371139609                  **Net Pay: $671.15**

| | |
|---|---|
| **Name:** TIMOTHY S. BOYKIN | **Social Security Number:** XXX-XX-3710 |
| **Team Member ID:** 323660 | **Location:** 02222/1 MI YPSILANTI |
| | **Employer:** Family Dollar Stores of Michigan, Inc. |
| **Period Start:** 04/01/2018 | **Base Rate:** $4,333.33 salary |
| **Period End:** 04/07/2018 | |
| **Payment Date:** 04/13/2018 | |
| | **Balance of Previous Vacation:** 22.366 days |
| | **Balance of PTO:** 24.000 days |
| | **Total Balance:** 46.366 days |

## Federal and State Tax Withholdings

| Type | Status | Allowances | Additional |
|---|---|---|---|
| Federal | Single | 0 | $0.00 |
| Michigan | Not Used | 1 | $0.00 |

### Earnings

| Description | Current | YTD |
|---|---|---|
| Regular Salary | $1,000.00 | $14,500.00 |
| Vacation Pay | $0.00 | $333.34 |
| Sick Pay | $0.00 | $166.67 |
| Store Manager Bonus | $0.00 | $194.24 |
| GTL | $0.95 | $14.25 |
| **TOTAL EARNINGS** | **$1,000.95** | **$15,208.50** |

### Pay Statement Summary

| Description | Current | YTD |
|---|---|---|
| TOTAL EARNINGS | $1,000.95 | $15,208.50 |
| TOTAL IMPUTED EARNINGS | - $0.95 | - $14.25 |
| TOTAL TAX | - $222.90 | - $3,554.61 |
| TOTAL PRE-TAX | - $57.15 | - $857.25 |
| TOTAL OTHER (DEDUCTIONS) | - $48.80 | - $732.00 |
| **TOTAL NET EARNINGS** | **$671.15** | **$10,050.39** |
| **TOTAL NET PAYMENTS** | **$671.15** | **$10,050.39** |

### Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Federal Tax | $113.90 | $1,896.48 |
| Social Security | $58.52 | $889.78 |
| Medicare | $13.68 | $208.09 |
| MI State Tax | $36.80 | $560.26 |
| **TOTAL TAX** | **$222.90** | **$3,554.61** |

### Pre-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Long-Term Disability | $9.49 | $142.35 |
| Vision | $1.01 | $15.15 |
| Medical | $40.00 | $600.00 |
| Dental | $6.65 | $99.75 |
| **TOTAL PRE-TAX** | **$57.15** | **$857.25** |

### Other Deductions

| Description | Current | YTD |
|---|---|---|
| Co Car Personal Use | $20.77 | $311.55 |
| Short-Term Disability | $10.80 | $162.00 |
| Vol Life Emp | $11.31 | $169.65 |
| Vol Life Spouse | $5.92 | $88.80 |
| **TOTAL OTHER** | **$48.80** | **$732.00** |

## Deposit Information

| Bank | Type of Account | Account Number | Amount |
|---|---|---|---|
| BANK OF AMERICA | Checking Account | ********1931 | $671.15 |

**View your pay stub online at www.familydollar.com**
**(Associate Member Page - "My Online Paystub and W2" Link)**
You will need to provide your login ID (SSN no dashes) and your password.



10301 Monroe Road · Matthews, NC 28105
P.O. Box 1017 · Charlotte, NC 28201-1017
1-866-377-6420

## MESSAGE FROM FAMILY DOLLAR

Electronic delivery of your W-2 is fast and secure. Don't forget to Opt-in for electronic delivery.

### Statement of Earnings and Deductions

**Pay Statement Number:** 1363125209    **Net Pay: $671.15**

| | | | |
|---|---|---|---|
| **Name:** TIMOTHY S. BOYKIN | | **Social Security Number:** XXX-XX-3710 | |
| **Team Member ID:** 323660 | | **Location:** 02222/1 MI YPSILANTI | |
| | | **Employer:** Family Dollar Stores of Michigan, Inc. | |
| **Period Start:** 03/25/2018 | | **Base Rate:** $4,333.33 salary | |
| **Period End:** 03/31/2018 | | | |
| **Payment Date:** 04/06/2018 | | | |
| | | **Balance of Previous Vacation:** 22.366 days | |
| | | **Balance of PTO:** 24.000 days | |
| | | **Total Balance:** 46.366 days | |

### Federal and State Tax Withholdings

| Type | Status | Allowances | Additional |
|---|---|---|---|
| Federal | Single | 0 | $0.00 |
| Michigan | Not Used | 1 | $0.00 |

### Earnings

| Description | Current | YTD |
|---|---|---|
| Regular Salary | $1,000.00 | $13,500.00 |
| Vacation Pay | $0.00 | $333.34 |
| Sick Pay | $0.00 | $166.67 |
| Store Manager Bonus | $0.00 | $194.24 |
| GTL | $0.95 | $13.30 |
| **TOTAL EARNINGS** | **$1,000.95** | **$14,207.55** |

### Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Federal Tax | $113.90 | $1,782.58 |
| Social Security | $58.51 | $831.26 |
| Medicare | $13.69 | $194.41 |
| MI State Tax | $36.80 | $523.46 |
| **TOTAL TAX** | **$222.90** | **$3,331.71** |

### Pay Statement Summary

| Description | Current | YTD |
|---|---|---|
| TOTAL EARNINGS | $1,000.95 | $14,207.55 |
| TOTAL IMPUTED EARNINGS | - $0.95 | - $13.30 |
| TOTAL TAX | - $222.90 | - $3,331.71 |
| TOTAL PRE-TAX | - $57.15 | - $800.10 |
| TOTAL OTHER (DEDUCTIONS) | - $48.80 | - $683.20 |
| **TOTAL NET EARNINGS** | **$671.15** | **$9,379.24** |
| **TOTAL NET PAYMENTS** | **$671.15** | **$9,379.24** |

### Pre-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| Long-Term Disability | $9.49 | $132.86 |
| Vision | $1.01 | $14.14 |
| Medical | $40.00 | $560.00 |
| Dental | $6.65 | $93.10 |
| **TOTAL PRE-TAX** | **$57.15** | **$800.10** |

### Other Deductions

| Description | Current | YTD |
|---|---|---|
| Co Car Personal Use | $20.77 | $290.78 |
| Short-Term Disability | $10.80 | $151.20 |
| Vol Life Emp | $11.31 | $158.34 |
| Vol Life Spouse | $5.92 | $82.88 |
| **TOTAL OTHER** | **$48.80** | **$683.20** |

### Deposit Information

| Bank | Type of Account | Account Number | Amount |
|---|---|---|---|
| BANK OF AMERICA | Checking Account | *******1931 | $671.15 |

**View your pay stub online at www.familydollar.com**
**(Associate Member Page - "My Online Paystub and W2" Link)**
You will need to provide your login ID (SSN no dashes) and your password.

Exhibit 2

## Houston Hoskins

| | |
|---|---|
| **From:** | Sara Rafal <srafal@dollartree.com> |
| **Sent:** | Wednesday, March 13, 2019 2:37 PM |
| **To:** | Tishkoff, William |
| **Cc:** | Mathis, Brooke; Malena Williams |
| **Subject:** | RE: Boykin/Family Dollar |
| **Attachments:** | DT-FD-Arbitration-Agreement-after-022016.pdf |

Will,

I am attaching the agreement, but it will take me a few days to get you the documentation that demonstrates your client's consent to it.

Thank you.

Sara

Sara B. Rafal
Assistant General Counsel, Employment
**♦DOLLAR TREE FAMILY♦DOLLAR**
500 Volvo Parkway
Chesapeake, Virginia 23320
Direct Dial: 757.698.7363
Fax Number: 757.321.5949
email: srafal@dollartree.com

\*\*PRIVILEGE AND CONFIDENTIALITY NOTICE: The information in this e-mail is intended for the named recipient(s) only. This e-mail may contain confidential or privileged information. If you are not an intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.

**From:** Tishkoff, William [mailto:will@tish.law]
**Sent:** Wednesday, March 13, 2019 2:20 PM
**To:** Sara Rafal <srafal@dollartree.com>
**Cc:** Mathis, Brooke <Brooke@tish.law>; Vukelich, Christopher M. <chris@tish.law>; Tishkoff, Linda <linda@tish.law>; Mathis, Gregg B. <gregg@tish.law>; Peifer, Jessica <jess@tish.law>; Saveri Nandigama <saveri@tish.law>
**Subject:** Boykin/Family Dollar

Sara,

Brooke is in an all-day mediation out-of-town for another case.

She will follow-up with you but, in the interim, please email us the below arbitration agreement.

This document was not produced by Family Dollar in response to Mr. Boykin's Michigan Employee Right To Know request, so it may not be material.

However, we are pleased to review it.

Are client is interested in engaging with you and Family Dollar in early settlement negotiations, which has advantages for both sides.

1

We also do not mind expediting the provision to you and Family Dollar of material documents relating to Mr. Boykin's claims; however, we would need to have a mutually acceptable schedule for reaching an early resolution.

Please let us know your thoughts in this regard.

Regards,

Will





**William G. Tishkoff**
407 North Main Street | Ann Arbor, MI 48104
p 734.663.4077 | dl 734.669.3860
c 734.604.1898 | f 734.665.1613
will@tish.law | Tish.Law

 

**From:** Sara Rafal <srafal@dollartree.com>
**Sent:** Wednesday, March 13, 2019 9:31:47 AM
**To:** Mathis, Brooke
**Cc:** Malena Williams
**Subject:** Timothy Boykin v. Family Dollar Stores of Michigan, LLC

Ms. Mathis,

Your letter dated March 8, 2019 regarding your client, Mr. Boykin, was forwarded to me. Please direct all future communications regarding this matter to my attention.

I have not had a chance to review the facts relating to this matter yet but I wanted to let you know that all claims that Mr. Boykin has against Family Dollar are subject to a Mutual Agreement to Arbitrate that he entered into electronically when he was hired. I can provide you with the agreement and the information if you would like.

I will be in touch with you after I am able to investigate the matter. If you are interested in resolving the matter at an early stage then I would ask that you hold off on taking further action until I have reviewed the matter and we've been able to discuss it.

Thank you.

Sara

Sara B. Rafal
Assistant General Counsel, Employment
**DOLLAR TREE** | **FAMILY DOLLAR**
500 Volvo Parkway
Chesapeake, Virginia 23320
Direct Dial: 757.698.7363
Fax Number: 757.321.5949
email: srafal@dollartree.com

# Exhibit 3

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

This is a Mutual Agreement to Arbitrate Claims ("Agreement") between the Company[1] and its associate ("Associate"). The Company and Associate are each a Party to the Agreement, and together they are the Parties to the Agreement and mutually bound by the Agreement.

The Parties recognize that disputes may arise between them during, or after the end of, Associate's employment with the Company. The Parties understand and agree that by entering into this Agreement they mutually agree to waive their right to a trial in court by a judge or jury, the Associate waives the right to participate in class or collective actions, and, in exchange, the Parties anticipate gaining the benefits of arbitration as a final and binding dispute-resolution procedure.

The Parties agree that the Federal Arbitration Act, 9 U.S.C. section 1, *et seq.* ("FAA"), shall govern the interpretation and enforcement of the Agreement and shall govern all proceedings relating to this Agreement. If the FAA does not apply (it being the Parties' intent that it will apply), then, only in that event, will the law of arbitration of the state in which Associate works or last worked for the Company apply. Nothing contained in this Agreement shall be construed to prevent Associate (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the use of such procedures.

**Claims Covered by the Agreement (which must be Arbitrated)**: The Parties agree to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, that can be raised under applicable federal, state, or local law, arising out of or related to Associate's employment (or its termination), that the Company may have against Associate or that the Associate may have against any of the following (1) the Company, (2) its officers, directors, employees, or agents in any capacity, (3) the Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (4) all successors and assigns of any of them.

Claims subject to arbitration include, but are not limited to, claims for: overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, pay for bank runs, off the clock work, wages, or other compensation; work conditions, including seating; breach of contract or covenant (express or implied); torts (including without limitation defamation either during or after employment with the Company); wrongful termination; retaliation or discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); benefits (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance); intellectual property, confidential information, or trade secrets; or violation of any federal, state, local, or other governmental law, statute, rule, regulation, or ordinance (except as provided below).

**Claims *Not* Covered by the Agreement (and not subject to Arbitration)**: Regardless of any other terms of this Agreement, this Agreement permits the filing of the following: (1) a court action for temporary equitable relief in aid of arbitration, where available by law; (2) claims for worker's compensation or unemployment compensation benefits. This Agreement also does not cover disputes that, as a matter of law, may not be subject to predispute arbitration agreements, such as claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203). If Associate works in Texas or any other state where the Company does not participate in the workers' compensation system, all legal and equitable claims relating to on-the-job injuries are covered by this Agreement and

---

[1] "The Company" or "Dollar Tree" means Dollar Tree, Inc. and any of its direct or indirect subsidiaries organized under the laws of the United States or a state or jurisdiction of the United States that employs Associate, including but not limited to Family Dollar Stores, Inc. and its subsidiaries, Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, Inc., or Greenbrier International, Inc.

Revised effective 2/1/16

must be arbitrated.

Regardless of any other terms of this Agreement, a claim may be brought before and remedies awarded by an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, or the National Labor Relations Board. Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

**Waiver of Class and Collective Actions**: Associate and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis. Accordingly, to the maximum extent allowable by law, there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action ("Class Action Waiver").

Associate will not be retaliated against, disciplined, or threatened with discipline as a result of exercising rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class or collective action in any forum. However, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the FAA and seek dismissal of any such action.

**Time Limits for Initiating Arbitration and Required Notice of All Claims**: The Parties agree that the Party initiating a claim must give written notice to the other Party no later than the expiration of the applicable statute of limitations (that is, the deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived as determined by the arbitrator but only to the same extent as would be the case in a court of law. The initiating Party is encouraged to give written notice of any claim as soon as possible after the event in dispute so that arbitration may take place promptly.

The written notice initiating arbitration (a "Demand for Arbitration") shall be sent to the Company, its officers, directors, employees, or agents, at the following address: Dollar Tree Arbitration Program c/o the Chief Legal Officer, 500 Volvo Parkway, Chesapeake, VA 23320. The Demand for Arbitration shall be sent to Associate at the last address recorded in Associate's Company profile.

The Demand for Arbitration shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought. It shall be sent to the other Party by certified or registered mail, return receipt requested. A Demand for Arbitration form can be found at www.dtarbitration.com.

**Arbitration Procedures**: Unless the Parties mutually agree to select a non-JAMS affiliated arbitrator, the arbitration will be administered by JAMS (or any successor of JAMS) ("administrator"). The arbitration shall be held in accordance with the then-current JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. A link to this site can also be found at www.dtarbitration.com. The Company will supply Associate with a printed copy of those rules upon written request, which must be made by sending an email to dtarbitration@dollartree.com. In the event of any conflict between the terms of this Agreement and the JAMS Employment Arbitration Rules & Procedures ("JAMS rules"), this Agreement shall control.

The Arbitration shall be conducted before a single arbitrator, who shall be either a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted, or an attorney who is experienced in employment law or the relevant subject matter of the dispute and is licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"). The Parties may mutually agree upon any qualified Arbitrator whether or not he/she is on the JAMS panel, but all Arbitrators shall conduct the proceedings under this Agreement and the JAMS rules. If the Parties are unable to agree upon an Arbitrator, the selection process of the JAMS rules will apply.

After receipt of a Demand for Arbitration, the Parties will discuss whether to participate in a pre-arbitration mediation, using a mutually-selected mediator, whose fees will be paid by the Company. If the Parties agree to mediate, such mediation will be held promptly. The Parties agree that mediation is encouraged as an initial step in this dispute-resolution process, but participation in mediation is entirely voluntary.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply, and a link to these rules can be found at www.dtarbitration.com. The Arbitration shall be final and binding upon the Parties. The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain dispositive motions, including but not limited to a motion to dismiss and/or a motion for summary judgment by any Party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure, and a link to these rules can be found at www.dtarbitration.com. Either Party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in labor and employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the essential factual and legal basis for the award.

**Representation**: Any Party may be represented by an attorney or other representative in arbitration.

**Notice of Claims, Discovery, Pre-Hearing, Hearing, and Award Rules**: Unless modified by this Agreement, the pre-hearing procedures, including notice of claims by either party, exchange of information, discovery, pre-hearing submissions, the designation of and the securing of witnesses and documents, the conduct of the hearing and the issuance of the arbitration award shall be in accordance with JAMS rules, with the Arbitrator taking into account the Parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism. Claims made by different associates shall not be consolidated under any circumstance, and any JAMS rule to the contrary shall not apply in proceedings under this Agreement.

**Subpoenas**: Each Party shall have the right to subpoena witnesses and documents to the extent allowable by law, subject to any limitations the Arbitrator shall impose for good cause shown.

**Place of Arbitration**: The arbitration shall take place in the county (or comparable governmental unit) in which Associate is or was last employed by the Company, unless both Parties otherwise agree in writing.

**Arbitration Fees and Costs**: The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator and arbitration forum; provided, however, that if Associate is the Party initiating the claim, Associate will contribute the lesser of the filing fee required by JAMS or the filing fee to initiate a claim in the court of general jurisdiction in the state in which Associate is (or was last) employed by the Company, with the Company making up the difference. Each Party shall pay in the first instance its own litigation costs and attorney's fees, if any. However, if any Party prevails on a statutory claim which affords the prevailing Party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue. Either Party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, as well as to enforce, confirm, modify, correct, or vacate an arbitration award as provided in the FAA.

- 3 -

**Interstate Commerce**: Associate agrees that the Company is engaged in transactions involving interstate commerce and that Associate's employment is related to such interstate transactions.

**Retaliation Prohibited**: It is against Company policy to retaliate against any associate who exercises his or her right to assert a claim under this Agreement. If Associate believes that he or she has been subject to retaliation, Associate should report such conduct immediately by going online to associateconnection.dollartree.com or by calling 1-800-876-8077.

**Survival**: This Agreement shall survive the termination of Associate's employment and the expiration of any benefit plan.

**At Will Employment**: This Agreement does not create a promise of employment for any period of time. Associate understands that he or she is and will remain employed "at will" and that either Party may terminate Associate's employment at any time.

**Sole and Entire Agreement**: This Agreement is the full and complete agreement relating to the formal resolution of disputes between the Parties. No Party is relying on any representations, oral or written, relating to the subject matter of this Agreement, except as specifically set forth in this Agreement.

**Construction and Severability**: If any provision of this Agreement is adjudged to be void, voidable, or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the Parties' mutual intent to create a binding agreement to arbitrate their disputes.

**Consideration**: The promises by the Company and by Associate to arbitrate disputes, rather than litigate them before courts or other bodies, provide consideration for each other. In addition, the Company's offer of employment to Associate is conditioned on and made in consideration of this Agreement.

**Electronic Signatures**: The Parties agree that their electronic signatures, whether digital or encrypted, are intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic signature means any electronic sound, symbol or process attached to or logically associated with a record and executed and adopted by a Party with the intent to sign such record.

**Effective Date**: The Effective Date of this Agreement is the day Associate agreed to this Agreement by affixing his or her electronic signature at the time of hire.

ASSOCIATE ACKNOWLEDGES THAT ASSOCIATE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE PARTIES RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT ASSOCIATE HAS ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY, OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

ASSOCIATE FURTHER ACKNOWLEDGES THAT ASSOCIATE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH ASSOCIATE'S PRIVATE LEGAL COUNSEL AND HAS DONE SO TO THE EXTENT ASSOCIATE WISHES.

ASSOCIATE UNDERSTANDS THAT ASSOCIATE IS GIVING UP THE RIGHT TO A TRIAL IN COURT WITH A JUDGE OR JURY.

This Agreement is made as of the Effective Date by the Parties:

DOLLAR TREE

By: _____
    Gary Philbin
    President

ASSOCIATE (signed electronically at the time of hire)

Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY S. BOYKIN,                         Case No. 19-cv-10755

    Plaintiff,                              Hon. Gershwin A. Drain

v.                                         Mag. Judge Stephanie Dawkins Davis

FAMILY DOLLAR STORES OF
MICHIGAN, INC., a Michigan
Corporation,

    Defendant.

---

| | |
|---|---|
| WILLIAM G. TISHKOFF (P45165) | THOMAS R. PAXTON (P36214) |
| CHRISTOPHER M. VUKELICH (P76420) | NICHOLAS HUGUELET (P74933) |
| BROOKE N. MATHIS (P82336) | Ogletree, Deakins, Nash, Smoak & |
| Tishkoff PLC | Stewart, PLLC |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 407 N. Main Street | 34977 Woodward Avenue, Suite 300 |
| Ann Arbor, MI 48104 | Birmingham, MI 48009 |
| (734) 663-4077 | Phone: (248) 593-6400 |
| will@tish.law | Fax: (248) 593-2603 |
| chris@tish.law | thomas.paxton@ogletree.com |
| brooke@tish.law | nicholas.huguelet@ogletree.com |

## DECLARATION OF NATALIE NEELY

I, Natalie Neely, declare as follows:

1.    I am over the age of eighteen (18) and am competent to testify to the matters contained herein. This declaration is based upon my personal knowledge. If called on as a witness, I would testify competently to the facts stated herein.

2.     I am currently employed by Family Dollar Management, LLC as Director, Human Resources Compliance & Associate Relations.

3.     Family Dollar Stores, Inc. is a parent company to Family Dollar, Inc., which is a parent company to Family Dollar Management, LLC as well as Family Dollar Stores of Michigan, Inc. and other entities that operate Family Dollar stores throughout the country. I will refer to the entities that operate Family Dollar stores collectively as "Family Dollar." In 2013, Family Dollar, Inc. was the parent company to Family Dollar Operations, Inc. and Family Dollar Stores of Michigan, Inc.

4.     Family Dollar stores receive merchandise and supply products through interstate shipping, and Family Dollar relies on interstate commerce to effectively run each store location.  Store employees use U.S. Mail, electronic mail, and interstate telephone lines to receive and transmit business information to out-of-state corporate parent entities.

5.     In the scope of my employment with Family Dollar, I am familiar with the employment practices of Family Dollar.  I am also familiar with Family Dollar's dispute resolution and arbitration programs regarding employment-related concerns and or complaints.

6.    I am also familiar with the electronic systems used by Family Dollar for these purposes: to share the Mutual Agreement to Arbitrate Claims with its employees ("Associates"), to provide information and training and other online learning programs to their Associates, and to gather, share and maintain certain personnel records pertaining to each Associate.

7.    Family Dollar presents training courses and company policies to its Associates through an online interface called Family Dollar University ("FDU"). FDU keeps records of each module an Associate completes.

8.    Each Associate uses a unique ID and a password to access the FDU modules. Associates create their own passwords, and are prohibited from sharing their passwords with any other individual, for any reason.

9.    One of FDU's training modules is titled "Open Door & Arbitration at Family Dollar" ("Arbitration Module").  Attached hereto as Exhibit A is a true and accurate copy of the slides comprising the Arbitration Module.  In this module, the Associate is presented with the Arbitration Agreement, and is given an opportunity to review and accept it.

10.    Once the Associate has accessed the Arbitration Module, the Associate is required to download the Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") and is instructed to review it.  The Associate must click a button to

3

download the agreement, click a box that indicates that the Associate has reviewed all the pages of the Arbitration Agreement, and then click a button acknowledging that the Associate has read the Arbitration Agreement and is ready to accept. To accept the agreement, the Associate must click all three buttons.

11.    Attached hereto as Exhibit B is a true and accurate copy of the Arbitration Agreement.

12.    In the Arbitration Module, the Associate is shown a screen that contains the following acknowledgement, in bold, capital letters:

> BY CLICKING THE "I ACCEPT" BUTTON BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT. I FURTHER UNDERSTAND AND AGREE TO THE USE OF AN ELECTRONIC METHOD OF SIGNATURE TO DEMONSTRATE MY ACCEPTANCE AND AGREEMENT TO THE TERMS OF THIS AGREEMENT.

See Exhibit A.

13.    On the screen described in the above paragraph, a button labeled "I ACCEPT" is located beneath the bolded acknowledgement. Once the Associate

clicks the "I ACCEPT" button, FDU makes a record of the date and time that the Associate accepted the Arbitration Agreement and completed the module.

14.    Attached hereto as <u>Exhibit C</u> is a true and correct excerpt of Timothy Boykin's FDU records.  The records show he accessed the Arbitration Module on July 15, 2013, and that he acknowledged reviewing and accepting the Arbitration Agreement that same day at 10:00:58 a.m.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on *April 5* , 2019.

*Natalie Neely*
NATALIE NEELY

38044115.1

5

# Declaration of Natalie Neely

# Exhibit A

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.63   Page 8 of 20

**FAMILY DOLLAR** — Open Door and Arbitration at Family Dollar    Home    Exit



## Open Door & Arbitration at Family Dollar

Click here for English

Haga clic aquí para español

FD-ODARB-2013    Page

Introduction    Page 1

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.64   Page 9 of 20

**FAMILY DOLLAR** | **Open Door and Arbitration at Family Dollar** | Home   Exit

## Purpose

The purpose of this learning module is to tell you about Family Dollar's revised Open Door Guidelines and the Mutual Agreement to Arbitrate Claims (Arbitration Agreement).

The Open Door Guidelines provide the process by which you can resolve your workplace concerns within the company through your direct chain of management or Human Resources.

The Arbitration Agreement outlines how Family Dollar and Team Members will handle covered disputes involving workplace concerns.  The Arbitration Agreement applies to all Family Dollar Team Members, and is a condition of continued employment.  Family Dollar believes this offers a great opportunity to resolve disputes privately, quickly, and efficiently.

## Learning Topics

This module will cover:

- The revised Open Door Guidelines

- The Arbitration Agreement

FD-ODARB-2013 | Page | ACKNOWLEDGE   BACK   NEXT

Purpose of the course and what you should learn from it

Page 2

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.65   Page 10 of 20

**FAMILY DOLLAR**   **Open Door and Arbitration at Family Dollar**   Home   Exit

 my future. my family dollar.

Dear Team Member:

Family Dollar is pleased to provide you with its Open Door Communication Guidelines ("Open Door Guidelines") and its Mutual Agreement to Arbitrate Claims ("Arbitration Agreement"). These apply to how you and Family Dollar resolve employment-related disputes.

The Open Door Guidelines provide Team Members with a process for resolving workplace concerns by working with their chain of leadership and our Human Resources department. We are convinced that a full internal review of differences is the quickest and most productive way to resolve these disputes. It also maintains good working relationships and avoids unnecessary confrontations.

Although the Company urges Team Members to participate in the Open Door Process, which many times will resolve employment-related disputes amicably and fairly, the Company also has an Arbitration Agreement. The Open Door Guidelines is separate from the Arbitration Agreement.

The Arbitration Agreement is a stand-alone and binding agreement that will apply company-wide. We hope that you and Family Dollar will not have legal disputes in connection with your employment, and if such disputes do arise, we hope that they can be resolved informally through the Open Door Policy. However, if an employment-related dispute cannot be resolved, or should you or Family Dollar decide at any time to pursue covered employment-related legal disputes against the other, such disputes must be resolved individually in arbitration—not by way of a judge or jury. The Arbitration Agreement requires both you and Family Dollar to arbitrate covered disputes, as defined in the Arbitration Agreement, before a private and neutral third-party chosen by the Team Member and Family Dollar.

If you have any questions about the Online Learning Course (OLC), Open Door Policy or Arbitration Agreement, please contact your Manager or contact the HR Service Center by visiting the My Family Dollar Life page from work or signing into MyFamilyDollarLife.com. In the Ask HR box, click Ask HR and View My Questions to submit your question. You may also call 1-866-377-6420. HR Service Center representatives are available Monday-Friday 8 a.m. to 10 p.m. Eastern time.

Sincerely,

Bryan Venberg
Senior Vice President, Human Resources
Family Dollar

FD-ODARB-2013   Page   ACKNOWLEDGE   BACK   NEXT

**FAMILY DOLLAR**  | **Open Door and Arbitration at Family Dollar** | Home   Exit

## Open Door Guidelines

- Family Dollar has revised the Open Door Guidelines outlined in the Team Member Handbook.

- The Open Door Guidelines provide Team Members with a process for resolving workplace concerns by working with their direct chain of management and the Human Resources department. We want you to know that Family Dollar's leadership team maintains an environment of openness and mutual support.

- We are convinced that a full internal review of differences is the quickest and most productive way to resolve these disputes. It also maintains good and productive working relationships and avoids unnecessary confrontations.

- Family Dollar encourages Team Members to participate in the Open Door process as outlined in the link below.

**Click Here to View and Print Family Dollar's Open Door Guidelines**

*Click here after you have read the Guidelines*
↓

FD-QDARB-2013   |   Page   |   ACKNOWLEDGE   BACK

WIIFM: Open Door Policy

Page 4

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.67   Page 12 of 20

**FAMILY DOLLAR** | **Open Door and Arbitration at Family Dollar** | Home   Exit

## Arbitration

- Arbitration is a process that Team Members and Family Dollar will use to resolve covered employment disputes individually, privately, quickly and efficiently instead of through a court or jury system.

- In Arbitration, a neutral third party resolves a covered employment related dispute between a Team Member and Family Dollar.

- All Team Members and Family Dollar are covered by this Arbitration Agreement.

**Click Here to View and Print
Family Dollar's Mutual Agreement to Arbitrate Claims**

☐ Click this checkbox to indicate that you have scrolled to read all pages of the Arbitration Agreement.

*Click here after you read the Arbitration
Agreement to agree and acknowledge*
↓

FD-ODARB-2013 | Page | ACKNOWLEDGE  BACK | NEXT

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.68   Page 13 of 20

**FAMILY DOLLAR**   **Open Door and Arbitration at Family Dollar**   Home   Exit

BY CLICKING THE "I ACCEPT" BUTTON BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT. I FURTHER UNDERSTAND AND AGREE TO THE USE OF AN ELECTRONIC METHOD OF SIGNATURE TO DEMONSTRATE MY ACCEPTANCE AND AGREEMENT TO THE TERMS OF THIS AGREEMENT.

**I ACCEPT**

FD-ODARB-2013   **Page**   ACKNOWLEDGE   BACK

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.69   Page 14 of 20

**FAMILY DOLLAR** | **Open Door and Arbitration at Family Dollar** | Home | Exit

# Congratulations!

You have completed the **Open Door and Arbitration** learning module.



Please close this learning module using the 'Exit' button in the upper right.

You may review this learning module at any time through your *Completed Work* in FDU.

FD-ODARB-2013 | Page | NEXT

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.70   Page 15 of 20

# Declaration of Natalie Neely

# Exhibit B

# FAMILY DOLLAR, INC.
## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

**1. INTRODUCTION:** This Mutual Agreement to Arbitrate Claims ("Agreement") is between me and Family Dollar, Inc. (the "Company"). Any reference to Company will be a reference also to Company's parents, subsidiaries, partners, divisions, and affiliated entities, and all successors and assigns of any of them. The Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern this Agreement, which evidences a transaction involving commerce, and the Company and I agree that the Company is engaged in transactions involving interstate commerce. **All disputes covered by this Agreement between me and the Company shall be decided by an arbitrator through arbitration and not by way of court or jury trial.**

**2. DISPUTES COVERED BY THE AGREEMENT:** The Company and I mutually consent and agree to the resolution by arbitration of all claims or controversies, past, present or future ("Disputes"), including without limitation, claims arising out of or related to my application for assignment/employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

Further, covered Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Agreement or any portion of the Agreement is void or voidable, with the exception noted in section 7, below, the "Class Action Waiver."

Except as otherwise provided, this Agreement covers the following legal claims that either the Company or I could bring arising out of or relating to my employment relationship with the Company, including, but not limited to: (i) discrimination based on race, creed, color, religion, sex, age, disability, leave status, national origin, ancestry, sexual orientation, marital status, veteran or military reserve status, privacy or any other characteristic protected by federal, state or local law, (ii) retaliation, including, but not limited to, whistleblower status or retaliation for filing a workers' compensation claim, (iii) torts, including, but not limited to, defamation, invasion of privacy, infliction of emotional distress, or workplace injury not otherwise covered by applicable workers' compensation laws, (iv) all employment related laws, including, but not limited to, Title VII of the Civil Rights Act, the Civil Rights Acts and amendments of 1866, 1871 and 1991, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Equal Pay Act, Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, the Fair Labor Standards Act, and any amendments to these laws, and any such related or similar state or local laws, (v) any federal, state or local law or common law doctrine for breach of contract, promissory estoppel, wrongful discharge or conversion, (vi) claims for interference with rights under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or other claims concerning administration of ERISA plans not excluded below, and (vii) claims under federal or state law regarding wages (including without limitation claims for pay, minimum wage and overtime), wage penalties, meal and rest breaks, classification, reimbursement of expenses, compensation, stock or incentive bonus plans, or intellectual property rights and associated laws.

**3. CLAIMS NOT COVERED BY THE AGREEMENT:** I agree that the following claims are not considered as a covered Dispute and are excluded under the Agreement: (i) Workers' Compensation benefit claims; (ii) state unemployment or disability insurance compensation claims; (iii) claims for benefits under employee benefit plans covered by ERISA that contain an appeal procedure or other exclusive and/or binding dispute resolution procedure in the respective plan; (iv) claims under the National Labor Relations Act within the jurisdiction of the National Labor Relations Board; and (v) claims that the Dodd-Frank Wall Street Reform and Consumer Protection Act or other controlling federal statutes bar from the coverage of mandatory pre-dispute arbitration agreements.

The Company and I may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled would be ineffectual without such provisional relief; provided, however, that all issues of final relief shall be decided in arbitration, and the pursuit of the temporary or preliminary injunctive relief described herein shall not constitute a waiver of rights under this Agreement.

**Pending Claims:** This Agreement does not apply to any civil lawsuit that was already filed by the Company or filed by me or on my behalf (whether individually or as a member of a class) ("Pending Claims") prior to the date that this Agreement is signed by me. However, this Agreement does apply to any civil lawsuit or other covered Dispute which is filed after I sign this Agreement. This Agreement also applies to any civil lawsuit that was filed before I began my employment with the Company, including without limitation civil lawsuits alleging class or collective claims on behalf of employees.

**4. HOW TO INITIATE ARBITRATION OF COVERED DISPUTES:** The Company and I agree that the aggrieved party must make a written "Request for Arbitration" of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that applicable state or federal law prescribes for the claim. The parties are

encouraged to make written Request for Arbitration of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

Written Request for Arbitration to the Company, or its officers, directors, employees or agents, shall be sent to its home office, currently at:  Arbitration Intake, Family Dollar, PO Box 1017, Charlotte, NC 28201, to the attention of the Office of General Counsel.  I will be given written Request for Arbitration at the last home address I provided in writing to the Company.  The Request for Arbitration shall, unless otherwise required by law, clearly state "Request for Arbitration".  The Request for Arbitration shall be sent to the other party by certified or registered mail, return receipt requested, and first class mail.

**5.   THE ROLE OF ADMINISTRATIVE AGENCIES:**  Disputes may be brought before an administrative agency to the extent applicable law permits access to an agency notwithstanding an agreement to arbitrate covered Disputes, including, but not limited to, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, the National Labor Relations Board and the Office of Federal Contract Compliance Programs. Nothing in the Agreement shall be construed to: (i) relieve any party of the duty to exhaust administrative remedies by filing a charge or complaint with an administrative agency and obtaining a right to sue notice, where otherwise required by law, or (ii) prevent either party from cooperating with a federal or state body as required by law. The Company will not retaliate against me for filing a claim with an administrative agency.

**6.     CLASS   AND   REPRESENTATIVE   ACTION WAIVERS:  THE COMPANY AND I HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION ("Class Action Waiver").  Notwithstanding any other clause contained in this Agreement, the preceding sentence shall not be severable from this Agreement in any instance in which the Dispute is brought as a class and/or collective action. THE COMPANY AND I ALSO HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A REPRESENTATIVE ACTION ("Representative Action Waiver").**  However, this Representative Action Waiver may be severed if it would otherwise render this Agreement unenforceable in any action brought under a private attorneys general law, and following severance the representative action may be brought in a court of law.

Notwithstanding any other clause contained in this Agreement, any claim that this Class Action Waiver or Representative Action Waiver, or any portion of this Class Action Waiver or Representative Action Waiver, is unenforceable, inapplicable, unconscionable, or void or voidable, shall be determined only by a court of competent jurisdiction and not by an arbitrator.

**7.   REPRESENTATION:**  Any party may be represented by an attorney selected by the party.  I understand and agree that I have been given the opportunity to discuss this Agreement with my private legal counsel and have availed myself of that opportunity to the extent I wish to do so.

**8.   PROCEDURES AND RULES:**  The parties shall select the neutral arbitrator and/or arbitration sponsoring organization by mutual agreement.

  If the parties are not able to mutually agree to an arbitrator and/or arbitration sponsoring organization, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and except as provided in this Agreement, shall be in accordance with the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available through the Company's Human Resources Department or via the internet at www.adr.org/employment).  Unless the parties jointly agree otherwise, the Arbitrator shall be an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened, or a retired judge from any jurisdiction (the "Arbitrator").  Unless the parties jointly agree otherwise, the arbitration shall take place in or near the city in which I am or was last employed by the Company.

In the event the parties mutually choose a sponsoring organization, or AAA is designated, the Arbitrator shall be selected as follows:  The organization selected shall give each party a list of eleven (11) arbitrators drawn from its panel of arbitrators. Each party shall have ten (10) calendar days from the postmark date on the list to strike all names on the list it deems unacceptable.  If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator.  If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains, with the party to strike first to be determined by a coin toss.  If no common name remains on the lists of all parties, the selected organization shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party striking first to be determined by a coin toss, until only one name remains.  That person shall be designated as the Arbitrator.

**9.  DISCOVERY AND SUBPOENAS:**  Each party shall at a minimum have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to propound requests for production of documents to any party.  Additional discovery may be had by mutual agreement of the parties or where the Arbitrator selected so orders pursuant to a request by either party.  Each party shall have the right to subpoena witnesses and documents for the arbitration, as well as documents relevant to the case from third parties.

**10.  ARBITRATION FEES AND COSTS:**  The Company shall pay the fees and costs of the Arbitrator and/or that are assessed by the organization through which the arbitration is conducted.

Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party as provided by law. In the event the law (including the common law) of the jurisdiction in which the arbitration is held requires a different allocation of arbitral fees and costs in order for this Agreement to be enforceable, then such law shall be followed.

**11. JURISDICTION OF ARBITRATOR:**

a)   The Arbitrator may award to me or the Company any remedy to which that party is entitled under applicable law (including, but not limited to, legal, equitable and injunctive relief), but such remedies are limited to those that would be available to a party in his or her individual capacity in a court of law for the Disputes presented to and decided by the Arbitrator. The Arbitrator shall apply the substantive law of the state in which the claim arose, or federal law, or both, as applicable to the claims asserted. The Arbitrator is without jurisdiction to apply any different substantive law.

b)   The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold prehearing conferences by telephone or in person, as the Arbitrator deems necessary. The Arbitrator shall have the authority to hear and decide dispositive motions, and/or a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is then before him or her.

c)   The Arbitrator shall render an award by written opinion no later than 30 days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later, unless the parties agree otherwise. The opinion shall be in writing and include the factual and legal basis for the decision.

**12.   JUDICIAL REVIEW:**   Judicial review shall be governed by the Federal Arbitration Act. 9 U.S.C. §§ 9-11. The decision of the Arbitrator may be entered and enforced as a final judgment in any court of competent jurisdiction.

**13.   CONSTRUCTION:**   Except as provided in section 6, "Class and Representative Action Waivers" above, if any provision of this Agreement is adjudged to be void, voidable or otherwise unenforceable, in whole or in part, such provision shall, without affecting the validity of the remainder of the Agreement, be: (i) modified to the extent necessary to render such term or provision enforceable preserving to the fullest extent possible the intent and agreements herein, or (ii) to the extent such modification is not permissible, severed from this Agreement. All remaining provisions shall remain in full force and effect. A waiver of one or more provisions of this Agreement by any party shall not be a waiver of the entire Agreement or any other provision of the Agreement.

**14.   CONSIDERATION:**   I and the Company agree that the mutual obligations by the Company and me to arbitrate Disputes, and my employment and/or continued employment, and the Company's payment of fees and costs of the arbitrator and/or that are assessed by the organization through which the arbitration is conducted (including my filing fee) provide adequate consideration for this Agreement.

**15.   AT WILL EMPLOYMENT:**   I understand and agree that this Agreement does not in any way alter the "at-will" status of my employment.

**16.   SOLE AND ENTIRE AGREEMENT:**   I agree that this is the complete agreement of the parties on the subject of arbitration of Disputes. This Agreement shall survive the termination of my employment and the expiration of any benefit. No party is relying on any representations, oral or written, on the subject of the effect, enforceability, or meaning of this Agreement, except as specifically set forth in this Agreement. This Agreement does not supersede any restrictive covenant(s) or confidentiality obligations previously entered into by me and the Company.

**BY CLICKING THE "I ACCEPT" BUTTON OR SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

_____
Employee Signature

_____
Date

*Bryan Venberg*

_____
Bryan Venberg, Senior Vice President, Human Resources

_____
Employee Name Printed

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.74   Page 19 of 20

# Declaration of Natalie Neely

# Exhibit C

Case 2:19-cv-10755-GAD-SDD   ECF No. 6-1   filed 04/08/19   PageID.75   Page 20 of 20

| User ID: | 323660 | | Name: | BOYKIN, TIMOTHY S | |

**Item Events**

| Item ID | Title | Scheduled Offering IDdesc | Completion Date | Status |
|---|---|---|---|---|
| HUMN-1000 | Family Dollar University | | 5/15/2013 10:09:25 AM | COMPLETE |

Details

Comments:

**Item Events**

| Item ID | Title | Scheduled Offering IDdesc | Completion Date | Status |
|---|---|---|---|---|
| FDCO-ITSEC-2013 | 2013 IT Security Training | | 5/29/2013 10:32:01 AM | COMPLETE |

Details

Comments:

**Item Events**

| Item ID | Title | Scheduled Offering IDdesc | Completion Date | Status |
|---|---|---|---|---|
| FD-ODARB-2013 | Open Door and Arbitration at Family Dollar | | 7/15/2013 10:00:58 AM | COMPLETE |

Details

Comments:

**Item Events**

| Item ID | Title | Scheduled Offering IDdesc | Completion Date | Status |
|---|---|---|---|---|
| LEAD-3008 | LEAD-3008: Coaching to Win | | 8/5/2013 9:10:00 AM | COMPLETE |

Details

Comments:

**Item Events**

| Item ID | Title | Scheduled Offering IDdesc | Completion Date | Status |
|---|---|---|---|---|
| SO-RECOVERY | SOFD - Family Dollar Recovery Standard Procedures | | 9/28/2013 12:21:02 PM | COMPLETE |

Details

Comments:

# Exhibit 5



November 21, 2018

Timothy Boykins
8285 Thornhill Drive
Ypsilanti, MI 48197

Re:  Employment Records

Dear Mr. Boykins:

In response to your employment records request regarding your employment file, all available records are attached.  We do not keep Worker's Compensation records or Medical records in-house.  You will need to request those separately if needed.

**Third-Party Administrator for Medical Records:**
**Reed Group**
**Legal/Compliance**
**10355 Westmoor Drive**
**Westminster, CO 80021**

**Third-Party Administrator of Worker's Compensation Records:**
**To:  Sedgwick CMS**
**Attn:  Adjuster- Jamie Burk**
**P.O. Box 14517**
**Lexington, KY 40512**
**Phone:  (215) 231-3533**

If you have further questions, please contact me.

Sincerely,

Jennifer Steffens
HR Support Specialist
JSteffe1@DollarTree.com

Exhibit 7

## Schedule by Labor Account - Weekly

| | |
|---|---|
| Time Period: | 9/30/2003 - 10/30/2018 |
| Query: | Previously Selected Employee(s) |

| | |
|---|---|
| Data Requested On: | 10/30/2018 2:42:30 PM |
| Executed on: | 10/30/2018 2:41PM GMT-04:00 |
| Printed for: | JSTEFFENS |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 3/26/2013 | Wed 3/27/2013 | Thu 3/28/2013 | Fri 3/29/2013 | Sat 3/30/2013 | Sun 3/31/2013 | Mon 4/1/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 4/2/2013 | Wed 4/3/2013 | Thu 4/4/2013 | Fri 4/5/2013 | Sat 4/6/2013 | Sun 4/7/2013 | Mon 4/8/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 4/9/2013 | Wed 4/10/2013 | Thu 4/11/2013 | Fri 4/12/2013 | Sat 4/13/2013 | Sun 4/14/2013 | Mon 4/15/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 4/16/2013 | Wed 4/17/2013 | Thu 4/18/2013 | Fri 4/19/2013 | Sat 4/20/2013 | Sun 4/21/2013 | Mon 4/22/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 4/23/2013 | Wed 4/24/2013 | Thu 4/25/2013 | Fri 4/26/2013 | Sat 4/27/2013 | Sun 4/28/2013 | Mon 4/29/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 4/30/2013 | Wed 5/1/2013 | Thu 5/2/2013 | Fri 5/3/2013 | Sat 5/4/2013 | Sun 5/5/2013 | Mon 5/6/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 5/7/2013 | Wed 5/8/2013 | Thu 5/9/2013 | Fri 5/10/2013 | Sat 5/11/2013 | Sun 5/12/2013 | Mon 5/13/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |

Labor Account:  GROUP 10/REGION 40/DISTRICT 299/STORE 02222/STORE W/-/SM-SALARIED

| Employee | Tue 5/14/2013 | Wed 5/15/2013 | Thu 5/16/2013 | Fri 5/17/2013 | Sat 5/18/2013 | Sun 5/19/2013 | Mon 5/20/2013 |
|---|---|---|---|---|---|---|---|
| BOYKIN, TIMOTHY S | | | | | | | |